**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DOUGLAS CAMERON AZIZ,<br><br>    Plaintiff,<br><br>    v.<br><br>JENNIFER LEACH, *et al.,*<br><br>    Defendants. | Case No. 2:17-cv-06934 DSF (AFM)<br><br>**ORDER DISMISSING FIRST AMENDED COMPLAINT WITH LEAVE TO AMEND (ECF No. 31)** |

## I.    SUMMARY OF PROCEEDINGS

On September 20, 2017, plaintiff filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983.  (ECF No. 1.)  In his Complaint, plaintiff named as defendants several officers with the Manhattan Beach Police Department ("MBPD"), including Jennifer Leach, Justin Hidalgo, Jason Gordon, and Jennifer Borys.  (*Id*. at 2-3.) Plaintiff also named as defendants MBPD Chief Eve Irvine and the City of Manhattan Beach (the "City").  (*Id.* at 3.)  All individual defendants apart from Chief Irvine were named in their individual capacities, and Chief Irvine was named only in her official capacity.  (*Id.* at 2-3.)

On November 2, 2017, all defendants filed a Motion to Dismiss (the "First Motion"), pursuant to Fed. Rule Civ. P. 12(b)(6).  (ECF No. 17.)  In the First Motion,

defendants sought to have the Complaint dismissed on the grounds that "all of plaintiff's claims are pled improperly, and the Complaint fails to state facts sufficient to support any claim." (ECF No. 17 at 13 (capitalization altered from original).) Plaintiff filed Opposition to the First Motion on November 20, 2017 (ECF No. 20), and defendants filed a Reply on December 1, 2017 (ECF No. 23).

On February 20, 2018, the Court granted, in part, defendants' First Motion, and dismissed the Complaint with leave to amend. (ECF No. 24.) Plaintiff filed a First Amended Complaint ("FAC") on March 12, 2018. (ECF No. 25.) In the FAC, plaintiff names as defendants the City of Manhattan Beach (the "City"), and Officers Leach, Hidalgo, Gordon, and Borys. (*Id*. at 2-4.) Two other named defendants, Officers Cheng and Caveney (*id.* at 3-4), have not been served with the operative pleading, and they have made no appearance in this action to date. All individual defendants are named in their individual capacities only. The FAC seeks monetary damages. (*Id*. at 11.)

On March 20, 2018, the City, Leach, Borys, Gordon, and Hidalgo (collectively "defendants") filed a Motion to Dismiss the First Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6) (the "Motion"). (ECF No. 31 at 2.) In the Motion, defendants contend that the FAC fails to set forth sufficient facts to allege claims in plaintiff's Claims 4, 5, 6, 8, 9, 10, 12, and 13. (*Id.* at 2-3.) Defendants also contend that the allegations in the FAC are insufficient to state a *Monell* claim against the City. (*Id*. at 2.) Defendants argue that "a single incident alleged . . . does not suffice to show a municipal policy." (*Id*. at 14 (emphasis omitted).) Defendants do not specify which of the multiple incidents set forth in the FAC they consider to be the "single incident" allegedly giving rise to plaintiff's *Monell* claim. Defendants seek to have the Court "dismiss the First Amended Complaint" (*id*. at 8), and argue that plaintiff should not be provided further opportunity to amend (*id*. at 15-20). Defendants contend that the FAC sets forth insufficient factual allegations to support most of the claims. (*Id.* at

4, 13, 16-19), and that plaintiff's Claim XIII "fails as a matter of law" (capitalization altered from original) (*id*. at 4, 16).

On April 19, 2018, plaintiff filed his Opposition to the Motion (ECF No. 33), accompanied by plaintiff's Declaration, but the Declaration merely attests that plaintiff has personal knowledge of the facts alleged in the pleading and his Opposition (ECF No. 33-1). On April 30, 2018, defendants filed a Reply. (ECF No. 34.) In their Reply, defendants contend that plaintiff "improperly attempts to proffer facts that were not alleged in" his FAC, and that the Court should not consider such facts in deciding the Motion. Defendants also argue that "it does not appear that plaintiff can cure the deficiencies of his" FAC, but they do not address the sufficiency of the claims augmented by any additional facts that plaintiff included in his Opposition. (ECF No. 34 at 3, 8.)

## II.     APPLICABLE LEGAL STANDARD

Pursuant to Rule 12(b)(6), a complaint may be dismissed as a matter of law for failure to state a claim for two reasons: (1) lack of a cognizable legal theory; or (2) insufficient facts under a cognizable legal theory. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). In determining whether the pleading states a claim on which relief may be granted, its allegations of material fact must be taken as true and construed in the light most favorable to plaintiff. *See Love v. United States*, 915 F.2d 1242, 1245 (9th Cir. 1990). The "tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Nor is the Court "bound to accept as true a legal conclusion couched as a factual allegation." *Wood v. Moss*, 134 S. Ct. 2056, 2065 n.5 (2014) (citing *Iqbal*, 556 U.S. at 678). Rather, a court first "discounts conclusory statements, which are not entitled to the presumption of truth, before determining whether a claim is plausible." *Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1129 (9th Cir. 2013).

Further, since plaintiff is appearing *pro se*, the Court must construe the allegations of the pleading liberally and must afford plaintiff the benefit of any doubt. *See Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010).* The Supreme Court, however, has held that, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. . . . Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted, alteration in original); *see also Iqbal*, 556 U.S. at 678 (To avoid dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' . . . A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." (internal citation omitted)).

Defendants in the Motion contend that, for civil rights claims in the Ninth Circuit, "plaintiffs are held to a higher pleading standard." To support this contention, they cite *Ivey v. Board of Regents*, 673 F.2d 266, 268 (9th Cir. 1982). (ECF No. 31 at 7.) Although in 1982, the Ninth Circuit in *Ivey* stated that a "liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled," the United States Supreme Court has explicitly rejected that a heightened pleading standard applies to any claims apart from fraud. The Supreme Court has held that the pleading rules of Fed. R. Civ. P. 8 calling for a "short and plain statement of the claim" apply to all civil rights cases. *See, e.g., Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512-13 (2002) (imposing a "heightened pleading standard in employment discrimination cases conflicts with Federal Rule of Civil Procedure 8(a)(2)"); *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U. S. 163, 164, (1993) (a federal court may not apply a

standard "more stringent than the usual pleading requirements of Rule 8(a)" in "civil rights cases alleging municipal liability"). The Supreme Court recently reiterated that plaintiffs need only inform defendants "of the factual basis for their complaint" and need "do no more to stave off threshold dismissal for want of an adequate statement of their claim." *Johnson v. City of Shelby, Miss.*, 135 S. Ct. 346, 347 (2014). Accordingly, plaintiff is not held to a heightened pleading standard for his civil rights claims, and, because plaintiff is proceeding *pro se*, the Court must construe the allegations of the FAC liberally and must afford plaintiff the benefit of any doubt.

## III.   PLAINTIFF'S FACTUAL ALLEGATIONS AND CLAIMS IN THE FAC

In a "Statement of Facts" section of the FAC, plaintiff alleges that he sent a letter to the Chief of the City's Police Department, Eve Irvine, on November 9, 2015. (ECF No. 25 at 4.) In the letter, plaintiff complained that officers with the MBPD had displayed racial bias in multiple incidents, and plaintiff suggested that police officers with the MBPD should wear video cameras. (*Id.*) Plaintiff attached a copy of this letter to his FAC as his Exhibit A. (*See id.* at 12-13.) In the letter, plaintiff stated that he had had five interactions with officers from the MBPD over the prior year, and that the officers had behaved "unprofessionally" and "illegally." (*Id.* at 12.) Plaintiff argued that the officers were "poorly trained." (*Id.*)

Plaintiff's FAC alleges that on January 30, 2016 unidentified officers with the MBPD entered plaintiff's home, placed plaintiff in handcuffs (which were too tight), and transported plaintiff to a "psychiatry ward." Plaintiff alleges that he did not meet state law criteria for "involuntary confinement." (*Id.* at 4-5.)

Early on the morning of November 5, 2016, four of the defendant MBPD officers, Leach, Hidalgo, Cheng, and Caveney, entered plaintiff's home without a warrant and without permission. The officers had their "firearms drawn," although

5

plaintiff was calm, compliant, followed their orders, and was "not resisting." The officers did not "knock-and-announce," and the use of firearms under the circumstances constituted excessive force. (*Id.* at 5.)

Later on the morning of November 5, 2016, Officers Leach and Hidalgo returned to plaintiff's home and spoke to two people when plaintiff was not present. Plaintiff alleges his speculation about what took place in that discussion. (*Id.*) Also later that day, plaintiff was arrested at his home without a warrant by Officers Leach, Hidalgo, and Gordon. Plaintiff alleges that the three officers "used excessive force" during the arrest when they punched plaintiff, struck plaintiff "with their knees" after plaintiff had been handcuffed, and "stood on plaintiff's face." (*Id.*)

During the arrest on November 5, 2016, plaintiff alleges that Officers Leach, Hidalgo, and Gordon "either turned off their body cameras or turned the position of the cameras" so that the use of excessive force was not recorded. (*Id.*) Plaintiff additionally alleges that the three officers "intentionally did not secure plaintiff's home or allow plaintiff to secure his home." (*Id.*) Officer Leach signed an Emergency Protective Order that was served by Officer Gordon, and which restricted plaintiff from returning to his home. (*Id.* at 5-6.) Plaintiff alleges that the Emergency Protective Order violated state law because it was "improperly issued," and its duration was "longer than required by law." (*Id.* at 6.) Plaintiff alleges that Officer Leach returned to plaintiff's home while plaintiff was in custody and informed "squatters" that plaintiff was in custody and they could enter plaintiff's home. While plaintiff was in custody, his home was burglarized. (*Id.*)

On November 7, 2016, plaintiff was arraigned, and a judge changed the Order to allow plaintiff to return to his home. Plaintiff was released from custody and he walked home. (*Id.* at 6.) Plaintiff attempted to enter his home, but he was arrested by MBPD officers and charged with violating the Emergency Protective Order, although it had been altered. The charges were later dismissed. (*Id.* at 6.)

On November 9, 2016, plaintiff went to the MBPD and requested an escort

home, but he was told by an unidentified officer that officers would meet plaintiff at his home. However, when plaintiff returned to his home, he was once again arrested. (*Id*. at 6.)

On August 14, 2017, plaintiff's home was entered by several MBPD officers including defendant Leach. The officers did not have a warrant or permission, and plaintiff alleges that no "exigent circumstances existed." (*Id*. at 6.) Officer Leach and about six other officers entered plaintiff's bedroom with their firearms drawn. Plaintiff was handcuffed, taken to the police station, and charged with resisting a peace officer. (*Id*. at 6-7.)

The first two claims in the FAC are asserted against "Doe" defendants, who have not been identified. (*Id*. at 7.)

Claims 3 and 4 are asserted against defendants Leach, Hidalgo, Caveney, and Cheng for unreasonable search and seizure for the warrantless entry into plaintiff's home on November 5, 2016, and for the use of excessive force for drawing their firearms during that incident. (*Id*. at 7.)

Claims 5, 6, and 7 are asserted against defendants Leach, Hidalgo, and Gordon for unreasonable seizure of plaintiff in connection with his arrest on November 5, 2016, and the unreasonable seizure of plaintiff's property when they failed to "secure plaintiff's home at the time of the arrest." (*Id*. at 8.) Plaintiff's Claim 7 arises from the unreasonable use of physical force during that arrest. (*Id*.) The Court notes that plaintiff states that his Fourth Amendment claim arises "from the battery by the defendants," citing paragraph 18. (*Id*.) To the extent that plaintiff is purporting to allege a claim for battery against any defendant, such a claim arises under state law, not the Fourth Amendment. Plaintiff's factual allegations in paragraph 18, however, pertain to the use of unreasonable force by Officers Leach, Hidalgo, and Gordon during an arrest on November 5, 2016. To the extent that plaintiff wishes to raise a federal civil rights claim from these facts, such a claim does arise under the Fourth Amendment. *See Graham v. Connor*, 490 U.S. 386, 395 (1989) ("the Fourth

Amendment provides an explicit textual source of constitutional protection against [certain] … physically intrusive governmental conduct").

Claim 8 is asserted against defendant Leach and Borys for the unreasonable seizure of plaintiff and "property" in connection with the "illegal" Emergency Protective Order, but it is not clear how defendants' enforcement of what was allegedly an "illegal" Order violated the Fourth Amendment. (*Id*. at 6, 8.) Violation of state law does not give rise to a federal civil rights claim. Rather, in order to state a federal civil rights claim against a particular defendant, plaintiff must allege that a specific defendant, while acting under color of state law, deprived him of a right guaranteed under the Constitution or a federal statute. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

Claim 9 is asserted against defendant Borys for an "illegal arrest" and unreasonable seizure of plaintiff on November 7, 2016. (*Id*. at 8.)

Claim 10 is asserted against defendants Leach, Hidalgo, and Gordon for the "spoliation of, fabrication of, or tampering with evidence in connection with the officers' intentional blocking of their video recordings." (*Id*. at 9 (referencing paragraph 18 of the FAC, which concerns the alleged use of unreasonable force during the arrest on November 5, 2016).)

Claims 11 and 12 are asserted against defendant Leach in connection with plaintiff's seizure on August 14, 2017. Plaintiff alleges that the warrantless search and seizure violated the Fourth Amendment and that excessive or unreasonable force was used in the drawing of firearms in plaintiff's home. (*Id*.)

Claim 13 is asserted against defendants Leach, Hidalgo, Gordon, Borys, Caveney, and Cheng for retaliation in violation of the First Amendment in response to plaintiff's letter to Chief Irvine. Plaintiff alleges that the actions taken by the officers from January 30, 2016, to August 14, 2017, were all retaliatory. (*Id*. at 9.)

Claim 14 is asserted against the City. (*Id*. at 10 (citing paragraphs 15 to 21).) Plaintiff alleges that the City violated the Fourth Amendment by tolerating

"longstanding, widespread customs" that allowed MBPD police officers to use unreasonable force or deadly force, and to conduct unreasonable searches and seizures of an individual in his private residence without permission, without a warrant, and in the absence of exigent circumstances. (*Id*.)

## IV. DISCUSSION

### A. *Monell* Claim(s)

Plaintiff has raised one or more claims against the City pursuant to *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 694 (1978), for the alleged "tolerance of the longstanding, widespread customs that allows [sic] MPD police officers" to use unreasonable excessive force and deadly force, and to conduct unreasonable searches and seizures in a private residence without permission or a warrant. (ECF No. 25 at 10 (citing paragraphs 15 to 21).) The cited portion of the FAC includes the entire Statement of Facts setting forth plaintiff's encounters with officers from the MBPD from January 30, 2016 (*id*. at 4) through August 14, 2017 (*id*. at 6).

To the extent that plaintiff is purporting to raise a federal civil rights claim against the City, the Supreme Court in *Monell*, held that a local government entity "may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Monell*, 436 U.S. at 694; *see also Connick v. Thompson*, 563 U.S. 51, 60 (2011) ("local governments are responsible only for their own illegal acts").

The improper custom or practice must be the "actionable cause" of a specific constitutional violation. *See Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1146 (9th Cir. 2012) ("Under *Monell*, a plaintiff must also show that the policy at issue was the 'actionable cause' of the constitutional violation, which requires showing both but

for and proximate causation."). In addition, liability against a policy maker or local government entity for implementation of an improper custom may not be premised on an isolated incident. *See, e.g., Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) ("Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy."); *Thompson v. Los Angeles*, 885 F.2d 1439, 1443-44 (9th Cir. 1989) ("Consistent with the commonly understood meaning of custom, proof of random acts or isolated events are insufficient to establish custom."), *overruled on other grounds, Bull v. City & County of San Francisco*, 595 F.3d 964, 981 (9th Cir. 2010) (en banc); *Hunter v. County of Sacramento*, 652 F.3d 1225, 1233-35 (9th Cir. 2011) ("We have long recognized that a custom or practice can be inferred from widespread practices or evidence of repeated constitutional violations for which the errant municipal officers were not discharged or reprimanded." (internal quotation marks omitted)).

Defendants argue that plaintiff "has proffered no factual allegations in support of his" *Monell* claim against the City. (ECF No. 31 at 13.) Defendants also argue that "a single incident alleged in a complaint [sic] . . . does not suffice to show a municipal policy." (*Id*. at 14.) Further, they contend that "the allegations regarding" plaintiff's claim against the City are "solely contained in paragraph 35" of the FAC, and that plaintiff fails to set forth any factual allegations to "establish" that a policy or custom caused his injuries. (*Id*.) Finally, defendants assert, without pointing to any legal authority, that plaintiff may not establish a "widespread" policy or custom by the City based on "multiple incidents against a single individual." (ECF No. 34 at 4.) Defendants further assert that "[c]ommon sense dictates that a police department's alleged 'widespread practice' of causing deprivations of individual's [sic] civil rights would encompass more than one individual during the two-year period in question." (*Id*.) "Common sense," however, is not legal authority.

Although defendants correctly rely on cases holding that liability under *Monell* may not arise from "isolated or sporadic incidents," (*id*.), these cases do not hold that a plaintiff must allege incidents showing that a city's policy or custom had been directed at multiple individuals.

Here, plaintiff's Claim 14 includes the factual allegations set forth in paragraphs 15 through 21 of the FAC. (ECF No. 25 at 10.) Within those paragraphs, plaintiff includes factual allegations concerning approximately ten encounters he had with officers from the MBPD from January 30, 2016, through August 14, 2017. (*Id*. at 4-6.) As plaintiff contends, these "many incidents over a long period of time" support plaintiff's claim that the MBPD has maintained practices or customs such that: MBPD officers "use unreasonable excessive force" or "deadly force" (pointing to four incidents); MBPD officers conduct unreasonable searches and seizures in private homes without permission or a warrant and in the absence of exigent circumstances (pointing to four incidents). (ECF No. 25 at 10; ECF No. 33 at 8-9.) In addition, plaintiff argues that he set forth factual allegations concerning incidents with MBPD officers beginning in November 2015. (ECF No. 33 at 8.) To the extent plaintiff wishes to rely on the incidents that he set forth in his letter to Chief Irvine from November 2015 (ECF No. 25 at 4) to support his *Monell* claim, then he should allege any incidents occurring prior to November 2015 that he contends were caused by the City's customs or policies within the body of a Second Amended Complaint. (*See, e.g*., ECF No. 33 at 4, in plaintiff's Opposition, he argues that he was stopped unreasonably by MBPD officers several times before 2015).

Accordingly, giving plaintiff the benefit of any doubt and construing the factual allegations liberally, plaintiff's allegations if clarified and specified in a further amended pleading may be sufficient to nudge a federal civil rights claim against the City "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570; *see also Alvarez v. Hill*, 518 F.3d 1152, 1158 (9th Cir. 2008) (because a prisoner was proceeding *pro se*, "the district court was required to 'afford [him] the

benefit of any doubt' in ascertaining what claims he 'raised in his complaint'")
(alteration in original); *Hebbe*, 627 F.3d at 342.

### B. First Amendment Retaliation

Plaintiff alleges that the conduct of defendants Leach, Hidalgo, Gordon, Borys, Caveney, and Cheng set forth in the FAC was retaliatory against plaintiff in response to the letter that plaintiff wrote to Chief Irvine in November 2015. (ECF No. 25 at 9.) Plaintiff does not provide any factual allegations showing that any one of the named officers was aware of his letter to the Chief before the officers are alleged to have taken retaliatory action against plaintiff.

To state a claim under the First Amendment for retaliation, plaintiff must allege that: (1) he engaged in constitutionally protected activity; (2) the defendant's actions would "chill or silence a person of ordinary firmness" from continuing to engage in the protected activity; and (3) the protected activity was a substantial motivating factor in the defendant's conduct, or, that there was a nexus between the defendant's actions and an intent to chill speech. *See Mendocino Envt'l Ctr. v. Mendocino County*, 192 F.3d 1283, 1300 (9th Cir. 1999); *Ford v. City of Yakima*, 706 F.3d 1188, 1195 (9th Cir. 2013) (it is unlawful for police officers to "use their authority to retaliate against individuals for their protected speech"). The Ninth Circuit has recognized that a reasonable person would be chilled from engaging in future exercise of his First Amendment rights by being subjected to retaliatory police conduct. *See, e.g., Skoog v. County of Clackamas*, 469 F.3d 1221, 1232 (9th Cir. 2006) (retaliatory search and seizure).

Here, accepting plaintiff's factual allegations as true, construing them liberally, and giving plaintiff the benefit of any doubt, plaintiff's FAC arguably alleges that the actions of some defendants were taken with an intent to chill plaintiff's speech. However, plaintiff's FAC does not sufficiently allege a causal relationship between the action taken by any specific defendant and plaintiff's protected activity. If plaintiff desires to pursue a First Amendment claim against any

defendant, he must allege a minimum factual and legal basis for each claim that is sufficient to give each defendant fair notice of what plaintiff's claims are and the grounds upon which they rest. *See, e.g., Brazil v. United States Dep't of the Navy*, 66 F.3d 193, 199 (9th Cir. 1995). In addition, plaintiff must set forth sufficient facts to allow the Court to draw the reasonable inference that each defendant named in plaintiff's First Amendment claim had knowledge of plaintiff's protected First Amendment conduct at the time that the defendant engaged in the allegedly retaliatory police conduct. In his Opposition, plaintiff argues that he was "well known" for speaking out against misconduct (ECF No. 33 at 10), but he does not allege any facts in the FAC to give rise to a reasonable inference that any of the defendants were aware that plaintiff had spoken out against misconduct prior to any allegedly retaliatory action that any officer took.

## C. Evidence Spoliation/Tampering/Fabrication

Plaintiff purports to raise a claim under the Fourteenth Amendment against defendants Leach, Hidalgo, and Gordon for the "spoliation of, fabrication of, or tampering with evidence in connection with the officers' intentional blocking of their video recordings." (ECF No. 25 at 9.) Plaintiff references one paragraph in connection with this claim, paragraph 18. In that paragraph, plaintiff alleges that these three defendants "either turned off their body cameras or turned the position of the camera [sic] such that the camera would not record the alleged incident of unreasonable force. (*Id*. at 5.) Plaintiff does not allege that any of these defendants filed a false police report. Further, plaintiff does not allege that he was charged with a crime on the basis of any evidence that he alleges was tampered with. Plaintiff also does not point to any evidence that he alleges was fabricated by any defendant.

To the extent that plaintiff is purporting to raise a federal due process claim under the Fourteenth Amendment arising from the fabrication of or tampering with evidence, plaintiff must set forth factual allegations raising a reasonable inference that defendants Leach, Hidalgo, and Gordon each took a deliberate action to tamper

with evidence or to fabricate evidence. *See Devereaux v. Abbey*, 263 F.3d 1070, 1074-76 (9th Cir. 2001) (en banc). In addition, plaintiff may not raise a federal civil rights claim unless he can show that the "fabrication actually injured [him] in some way," such as being criminally charged on the basis of the fabricated evidence. *Spencer v. Peters*, 857 F.3d 789, 798 (9th Cir. 2017); *Devereaux*, 263 F.3d at 1074-75. Here, it is not clear from the FAC whether plaintiff was charged with a crime based on the evidence that he alleges was fabricated or tampered with, and the current allegations of the FAC are insufficient to plead a violation of the Fourteenth Amendment.

### D. Fourth Amendment Claims

Plaintiff's FAC purports to raise multiple claims under the Fourth Amendment against certain defendants for allegedly: (1) entering plaintiff's home without a warrant or permission; (2) using unreasonable force in entering plaintiff's home and arresting plaintiff in his home by the use of drawn firearms; (3) arresting plaintiff without a warrant; (4) using unreasonable physical force in arresting plaintiff; and (5) allowing plaintiff's home to be burglarized while plaintiff was in custody.

The Fourth Amendment protects against unreasonable searches and seizures and "guarantees citizens the right 'to be secure in their persons . . . against unreasonable . . . seizures' of the person." *Graham*, 490 U.S. at 394 (alterations in original). Such claims are "analyzed under the Fourth Amendment's 'objective reasonableness standard.'" *Saucier v. Katz*, 533 U.S. 194, 204 (2001) (citing *Graham*, 490 U.S. at 388). The "reasonableness" of an officer's actions "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. The determination of whether an officer's use of force was "reasonable" under the Fourth Amendment "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham*, 490 U.S. at 396 (internal quotations omitted). Such an analysis requires

"careful attention to the facts and circumstances in each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* Moreover, the Supreme Court has held that, in determining whether the force used to effect a particular seizure is "reasonable" under the Fourth Amendment, "the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397. It is clear that "the most important factor under *Graham* is whether the suspect posed an immediate threat to the safety of the officers or others." *C.V. v. City of Anaheim*, 823 F.3d 1252, 1255 (9th Cir. 2016) (internal quotation marks omitted).

A "'seizure' of property occurs when there is some meaningful interference with an individual's possessory interests in that property." *United States v. Jacobsen*, 466 U.S. 109, 113 (1984). Further, "[i]t is a basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable." *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006) (internal quotation marks omitted); *see also Bonivert v. City of Clarkston*, 883 F.3d 865, 873 (9th Cir. 2018) ("It has long been recognized that the 'physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed.'"). The Fourth Amendment permits a warrantless search of a person's home or person only if the "exigencies of the situation make the needs of law enforcement so compelling that the warrantless search is objectively reasonable under the Fourth Amendment." *Brigham City*, 547 U.S. at 403 (internal quotation marks omitted).

Here, plaintiff's FAC alleges that various defendants at different times entered plaintiff's residence without a warrant, without permission, and in the absence of any exigencies that made the needs of law enforcement so compelling at that point in time that the warrantless search can be considered objectively reasonable under the Fourth Amendment. *See, e.g., Brigham City*, 547 U.S. at 403. In addition, plaintiff alleges

that some defendants violated the Fourth Amendment by failing "to secure plaintiff's home at the time of the arrest." (ECF No. 25 at 8.) Plaintiff alleges that Officers Leach, Hidalgo, and Gordon "intentionally did not secure plaintiff's home or allow plaintiff to secure his home," but this conclusory allegation is not supported by any specific factual allegations. (*Id.* at 5.) Plaintiff alleges no facts raising a reasonable inference that any defendant purposefully took any action to interfere with plaintiff's possessory interest in any personal property left inside plaintiff's house. A federal civil rights claim does not arise from allegations that a defendant acted negligently. *See, e.g., Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2472 (2015) ("liability for negligently inflected harm is categorically beneath the threshold of constitutional" protection). Further, it is not clear from the allegations in the FAC how an intentional action of any defendant named in this claim caused plaintiff to suffer a constitutional injury. *See, e.g*., *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988). The theft of plaintiff's personal property by unidentified private individuals does not give rise to a federal civil right claim.

In the Motion, defendants contend that the officers' conduct of "brandishing guns" "cannot constitute excessive force as a matter of law," citing only *Robinson v. Solano County*, 278 F.3d 1007 (9th Cir. 2002) (en banc), from the Ninth Circuit. (ECF No. 31 at 18-19; *see also* ECF No. 17 at 20-21.)[1] Although defendants acknowledge that the Ninth Circuit in *Robinson* held that the officers in that case who held a suspect at gunpoint in 1995 "were entitled to qualified immunity," defendants fail to address the lapse of time since the *Robinson* case was decided in 2002. *See Robinson*, 278 F.3d at 1016. Moreover, the Ninth Circuit held in *Robinso*n that, in general it is now the law that, "pointing a gun to the head of an apparently unarmed suspect during an investigation can be a violation of the Fourth Amendment,

---

[1] The Court notes that defendants cite cases from the Six, Seventh, and Eighth Circuits (all of which were decided before *Robinson*), as well as three district court cases from New York (ECF No. 31 at 18), none of which is binding on this Court.

especially where the individual poses no particular danger." *Robinson*, 278 F.3d at 1015; *see also Thompson v. Lake*, 607 Fed. Appx. 624, 626 (9th Cir. Apr. 3, 2015) ("It is clearly established that police may not detain a suspect a [sic] gunpoint where '[t]he crime under investigation was at most a misdemeanor[,] the suspect was apparently unarmed' and nonviolent, and '[t]here were no dangerous or exigent circumstances apparent.'" (alterations in original)) (now citable for its persuasive value per Ninth Circuit Rule 36-3); *Baldwin v. Placer County,* 418 F.3d 966, 970 (9th Cir. 2005) (pointing weapons and pushing a suspect may constitute excessive force). Further, a peace officer's "show of force is subject to Fourth Amendment reasonableness requirements even where no actual force is applied." *Motley v. Parks*, 432 F.3d 1072, 1088-89 (9th Cir. 2005) (finding that an officer's actions in pointing a weapon at an infant and keeping the weapon trained on the infant while searching fell "outside the Fourth Amendment's objective reasonableness standard," and that any reasonable officer should have known that holding an infant at gunpoint constituted excessive force in 1999) (en banc), *overruled on other grounds by United States v. King*, 687 F.3d 1189 (9th Cir. 2012) (en banc).

Defendants argue that plaintiff does not allege that the "officers pointed a gun to his head," and does not allege what crime he was being arrested for. (ECF No. 31 at 19.) Defendants are correct that plaintiff does not clearly allege that any of the guns during the incidents were pointed at his head, but plaintiff does allege that Officers Leach, Hidalgo, Cheng, and Caveney "entered plaintiff's home without [a] warrant . . . with their firearms drawn" at a time when plaintiff was following orders and was not resisting. (ECF No. 25 at 5.) Further, plaintiff alleges that approximately seven MBPD officers, including defendant Leach, "entered plaintiff's bedroom with their firearms drawn before plaintiff was arrested and charged with "resisting a peace officer." (*Id*. at 6.) Defendants are incorrect to the extent that they assert that the Ninth Circuit has held that "drawing a gun on an arrestee, without shooting, cannot be excessive force." (*Id*.) To the contrary, the Ninth Circuit recently stated that: "We

have previously held, in the context of a residential confrontation, that 'pointing a loaded gun at a suspect, employing the threat of deadly force, is use of a high level of force.'" *Thompson v. Rahr*, 885 F.3d 582, 586 (9th Cir. 2018) (citing *Espinosa v. City & Cty. of S.F.*, 598 F.3d 528, 537-38 (9th Cir. 2010) (denying qualified immunity where three officers pointed loaded guns at a man "knowing that he had not been accused of any crime," the officers outnumbered the suspect, and the suspect did not present any danger to the public and was not known to be armed)). None of the facts in the FAC gives rise to a reasonable inference that any defendant thought that plaintiff was armed or that plaintiff presented a safety threat at the times that the officers allegedly entered his residence with drawn guns.

Nevertheless, plaintiff's FAC does not allege what crime or crimes he was arrested for in each of the alleged incidents. If plaintiff wishes to pursue his Fourth Amendment claims arising from the use of guns during his arrests, then plaintiff must set forth facts in a Second Amended Complaint showing which defendant took what action during each incident, whether each defendant named in a specific claim is alleged to have pointed a gun at plaintiff at any time, and which defendant is alleged to have participated in another's affirmative acts, or failed to perform an act that he or she was legally required to do that caused the deprivation of which plaintiff complains. *See Leer*, 844 F.2d 628, 633; *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978). Moreover, while plaintiff's claims that some defendants arrested plaintiff in his residence without a warrant may be adequate to allege a presumptively unreasonable seizure of plaintiff, the FAC does not clearly set forth factual allegations showing which defendant or defendants are alleged to have arrested plaintiff during each incident. For example, plaintiff raises his Claim 9 against Officer Borys for an unreasonable seizure of plaintiff on November 7, 2016, referencing paragraphs 18, 19, and 20. (ECF No. 25 at 8.) Those three paragraphs in the FAC, however, only allege that Officer Borys signed a "complaint." Plaintiff

was allegedly arrested on November 7, 2016, but plaintiff alleges that he was "arrested by MBPD officers," not by Officer Borys. (*Id*. at 5-6.)

### E. Dismissal with leave to amend

The Court should not dismiss a *pro se* complaint without leave to amend unless it is absolutely clear that the deficiencies of the pleading cannot be cured by amendment. *See Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015). Defendants' Motion seeks to have the FAC dismissed without leave to amend. (*See* ECF No. 31 at 20; ECF No. 34 at 3, 8.) Defendants argue that "it does not appear that plaintiff can cure the deficiencies of his" FAC, but they fail to address the sufficiency of the claims augmented by any additional facts that plaintiff included in his Opposition. As set forth above, it is not clear that plaintiff will be unable to cure the deficiencies in any of his claims with further amendment. (ECF No. 34 at 3, 8.) Accordingly, the FAC is dismissed with leave to amend.

***********

IT THEREFORE IS ORDERED that defendants' Motion to Dismiss is GRANTED, and plaintiff's FAC is dismissed with leave to amend.

**If plaintiff still desires to pursue this action, he is ORDERED to file a Second Amended Complaint no later than thirty (30) days after the date of this Order, remedying the pleading deficiencies discussed above.** The Second Amended Complaint should bear the docket number assigned in this case; be labeled "Second Amended Complaint"; and be complete in and of itself without reference to the original complaint, or any other pleading, attachment, or document. Additionally, plaintiff is admonished that, irrespective of his *pro se* status, if plaintiff wishes to proceed with this action, then he must comply with the Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the Central District of California. *See, e.g., Briones v. Riviera Hotel & Casino*, 116 F.3d 379, 382 (9th Cir. 1997) ("*pro se* litigants are not excused from following court rules"); including the Local Rules regarding the format of a pleading, such as L.R. 11-3.2,

which requires that the lines on each page be numbered and that no more than 28 lines of double-spaced text be on each page.

The clerk is directed to send plaintiff a blank Central District civil rights complaint form, which plaintiff is encouraged to utilize. Plaintiff is admonished that, if he desires to pursue this action, he must sign and date the civil rights complaint form, and he must use the space provided in the form to set forth all of the claims that he wishes to assert in a Second Amended Complaint.

If plaintiff does file a Second Amended Complaint, then plaintiff should serve the Summons and Second Amended Complaint on all named defendants in this action. Pursuant to Federal Rule of Civil Procedure 4(m), plaintiff must serve defendants within 90 days of the filing of the Second Amended Complaint. Further, Plaintiff must file a Proof of Service of the Summons and Complaint within ten (10) days of service. Plaintiff is warned that failure to effectuate service by the required date may result in the dismissal of the action as to any unserved defendant(s) by reason of plaintiff's failure to prosecute, unless plaintiff can show good cause for extending the time for service.

Plaintiff is further admonished that, if he fails to timely file a Second Amended Complaint, or fails to remedy the deficiencies of his pleading as discussed herein, the Court will recommend that the action be dismissed with prejudice on the grounds set forth above and for failure to diligently prosecute.

In addition, if plaintiff no longer wishes to pursue this action, then he may request a voluntary dismissal of the action pursuant to Federal Rule of Civil Procedure 41(a). The clerk also is directed to attach a Notice of Dismissal form for plaintiff's convenience.

Finally, if plaintiff wishes to receive free information and guidance concerning self-representation, a *pro se* clinic operates within the Court at the following times and location:

Edward R. Roybal Federal Building and United States Courthouse
255 East Temple Street, Suite 170
Los Angeles, CA 90012
Mondays, Wednesdays and Fridays: 9:30 am-12:00 pm and 2:00 pm-4:00 pm
(213) 385-2977, ext. 270; www.cacd.uscourts.gov/prose

**IT IS SO ORDERED.**

DATED:  12/4/2018

_____
ALEXANDER F. MacKINNON
UNITED STATES MAGISTRATE JUDGE

Attachment:  Civil Rights Complaint (Form CV-066)
                     Notice of Dismissal (Form CV-09)